

# THE ATTORNEY GENERAL
## OF TEXAS

April 17, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Ron Jackson
Executive Director
Texas Youth Commission
P. O. Box 9999
Austin, Texas 78766

Opinion No. JM-680

Re: Applicability of the 1985 federal fair labor standards amendments to certain employees of the Texas Youth Commission

Dear Mr. Jackson:

You ask several questions about the interplay of state and federal laws relating to overtime compensation for certain employees of the Texas Youth Commission. Your questions are as follows:

> 1. Does article V, section 2f(1), of the current General Appropriations Act prohibit state agencies from utilizing the more liberal compensatory time provisions of the 1985 Fair Labor Standards Amendments (P.L. 99-150), section 2?

> 2. Even if your response to the first question is affirmative, does the final paragraph of section 2f(1) authorize the Texas Youth Commission, as a correctional institution, to calculate overtime and to compensate for overtime for its employees who are engaged in direct supervision of children who have been adjudicated delinquent, in any manner consistent with the FLSA?

> 3. Does article 5165a, V.T.C.S., establish that the standard workweek may be more than 40 hours a week for child care workers (whether called houseparents, youth activity supervisors or caseworkers) who are employed by and whose lodging is provided by the Texas Youth Commission during their tour of duty?

> 4. If your answer to the previous question is affirmative, may the regular hourly rate of such a TYC employee be calculated, and may overtime compensation be paid, by the method authorized by

29 U.S.C. §207(g)(3) and described in 29 C.F.R. §778.114(a)?

5.a. If your answer to the third question is affirmative, may the Texas Youth Commission properly calculate the hourly rate of pay for an hourly employee, who is employed as a child care worker and whose lodging is provided by TYC during his tour of duty, at a rate other than that set out in Attorney General Opinion H-465 (1974)?

5.b. Specifically, if the normal number of hours of employment per week for such an employee is 64, may the hourly rate be set by dividing 1/52 of the yearly rate by 64?

Your concerns stem from the fact that certain employees of the commission, such as houseparents, are routinely "on duty" more than 40 hours a week because they live at commission facilities during their work assignments. Section 7(a)(1) of the Fair Labor Standards Act of 1938, 29 U.S.C. §§201 et seq., (hereinafter FLSA), forbids employers from requiring or allowing employees to work more than 40 hours per week without compensating the employees for the overtime at 1 1/2 times the employee's regular rate of pay. The FLSA applies to public employers. See Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985); see also Attorney General Opinion JM-475 (1986) (for history of controversy). Prior to amendment in 1985, the FLSA required covered employers to actually pay employees at 1 1/2 times their regular rate of pay for overtime unless they were allowed to take time off at 1 1/2 times their accrued overtime hours during the same pay period in which the overtime accrued. Congress amended the FLSA in 1985 to allow public employers to provide this compensatory time off under more liberal terms. See Fair Labor Standards Amendments of 1985, Pub. L. 99-150, §2(a)(1) (1985) (amending 29 U.S.C. §207).

Attorney General Opinion Nos. JM-491 and JM-475 (1986) resolve your first and second questions. Your first question is whether article V, section 2f(1), of the current General Appropriations Act, Acts 1985, 69th Leg., ch. 980, at budget 476, prohibits state agencies from using the more liberal compensatory time provisions of the 1985 Fair Labor Standards Amendments. See Pub. L. 99-150, §2(a)(1). In Attorney General Opinion Nos. JM-475 and JM-491, this office indicated that the Texas Legislature, by enacting sections 2f(1) and (4) of the appropriations act, evidenced the intent to authorize state agencies to take advantage of exceptions to the FLSA granted by Congress. Thus, section 2f(1) does not prohibit the use of these exceptions. State agencies may take advantage of FLSA exceptions so long as the

agencies do so in the manner prescribed under the FLSA. See 29 U.S.C. §207.

One of the FLSA exceptions covers law enforcement employees. See 29 U.S.C. §§207(o)(3)(A), 207(p)(1); see also §207(k); 29 C.F.R. §553.1 et seq. Your second question is whether the Texas Youth Commission, "as a correctional institution," may calculate overtime pursuant to the final paragraph of section 2f(1) of the Appropriations Act "in any manner consistent with the FLSA." Although your second question is premised upon an affirmative response to your first question, the scope of your second question is not clear. Accordingly, it is necessary to address the aspect of your question which relates to the FLSA law enforcement exception. The final paragraph of section 2f(1) provides:

> Exceptions to the workweek overtime calculation for hospital, fire protection, and law enforcement activities (including security personnel in the correctional institutions) shall be made in accordance with the FLSA. (Emphasis added).

Because this paragraph requires compliance with the FLSA, it is not clear what you mean by asking whether the commission may calculate overtime pursuant to this paragraph without violating the FLSA. We understand you to ask whether the first part of section 2f(1) negates this paragraph. It does not. Whether the Texas Youth Commission may take advantage of an exception for law enforcement activities depends upon the scope of the term as used in the FLSA.

For purposes of the FLSA the term "law enforcement employees" includes security personnel in correctional institutions. See 29 U.S.C. §§207(k), 207(p)(1). Federal regulations, however, define a law enforcement employee under the FLSA as

> any employee (1) who is a uniformed or plain-clothed member of a body of officers and subordinates who are empowered by statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes, (2) who has the power of arrest, and (3) who is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics.

29 C.F.R. §553.4.

Although Texas Youth Commission child care workers may perform hazardous work in the supervision of the troubled young people in their care, they do not as a class fall within the federal definition of law enforcement employees. Section 61.002 of the Texas Human Resources Code provides:

> The purpose of this chapter is to provide for administration <u>of the state's correctional facilities for delinquent children</u>, to provide a program of constructive training aimed at rehabilitation and reestablishment in society of children adjudged delinquent by the courts of this state and committed to the Texas Youth Commission, and to provide active parole supervision for delinquent children until officially discharged from custody of the Texas Youth Commission. (Emphasis added).

Many Youth Commission facilities may be correctly characterized as "correctional institutions." Not <u>all</u> of the people employed at these facilities, however, are employed specifically as security personnel. To fit within the FLSA's law enforcement exception, an employee must fit the narrow definition set forth in section 553.4 of the federal regulations quoted above. Whether particular employees meet this definition is a fact question. The article 4399, V.T.C.S., opinion process was not intended to resolve factual disputes.

Your third question is whether article 5165a, V.T.C.S., which governs the weekly working hours of state office employees, authorizes a standard workweek of more than 40 hours for commission child care workers. Section 2 of article 5165a provides:

> Except as provided by Section 2A of this Act, each state employee paid on a full-time salary basis, shall work forty (40) hours a week. <u>Provided, however,</u> that the administrative heads of agencies whose functions are such that certain services must be maintained on a twenty-four (24) hours per day basis are authorized to require that essential employees engaged in performing such services be on duty for a longer work-week in necessary or emergency situations. <u>Provided further that the provisions of this Act do not apply to houseparents who are employed by and who live at the facilities of the Texas Youth Commission.</u> (Emphasis added).

The dispositive issue is whether the last sentence of section 2 applies only to the sentence which precedes it or to the requirement that state employees work a 40 hour week.

The last sentence of section 2 of article 5165a must be construed to except from article 5165a houseparents who are employed by and who live at facilities supervised by the Texas Youth Commission. The exception refers to the provisions of this act, not to the preceding exception from the act. The syntax of the sentence also suggests that it applies to the 40 hour workweek requirement. Section 2 begins with the requirement that salaried state employees work a 40 hour week. The sentence following this requirement states "[p]rovided, however," that an exception is authorized "in necessary or emergency situations." The exception for youth commission houseparents begins with the phrase "[p]rovided further." This language indicates that both exceptions refer back to the basic 40 hour workweek requirement. Moreover, the bill caption under which this exception was first enacted provides for "the exemption of live-in houseparents employed by the Texas Youth Council from the state employees work-week law." Acts 1977, 65th Leg., ch. 148, at 315. Your specific question is whether article 5165a establishes that the standard workweek for the commission's child care workers may exceed 40 hours. Article 5165a's 40 hour workweek requirements do not apply to the commission's child care workers. This does not mean that article 5165a affirmatively authorizes a workweek in excess of 40 hours.

As indicated previously, the commission must comply with the FLSA. Section 207(a)(1) of Title 29 forbids employers, including public employers, from requiring or allowing employees to work more than 40 hours per week without compensating the employees for the overtime at 1 1/2 times the employee's regular rate of pay. The act does not fix a 40 hour maximum workweek. See 29 C.F.R. §778.102.

Your fourth, fifth and sixth questions all relate to the computation of a regular rate of pay from which overtime is determined under the FLSA. In the general computation of overtime compensation under the FLSA, a "regular rate" must be determined. This rate is an hourly rate. See 29 C.F.R. §778.109. When an employee works on a salary basis and the salary covers a period longer than one workweek, the salary must be reduced to its workweek equivalent. The appropriations act indicates that annual salaries for state employees are to be paid in 12 equal monthly installments. See Acts 1985, 69th Leg., ch. 980, art. V, §2(a), at budget 475. Under the federal regulations, a monthly salary translates to its equivalent weekly wage by multiplying the salary by 12, the number of months, and dividing the product by 52, the number of weeks. See 29 C.F.R. §778.113(b). The regular rate of pay for salaried employees is determined by dividing the weekly wage by the number of hours per week which the salary is intended to compensate. See 29 C.F.R. §778.113(a).

Your fourth question is whether the regular rate for the computation of overtime compensation may be determined by the method authorized in section 207(g)(3) of the FLSA as described in section 778.114(a) of Title 29 of the Code of Federal Regulations. Section 778.114 provides a method for determining the regular rate necessary to complete the overtime required by section 207(a) when the employee receives a fixed salary for fluctuating weekly hours. Regulations issued pursuant to section 207(g)(3) are published at section 548.1, et seq., of Title 29 of the Code of Federal Regulations. Section 778.114 addresses problems arising when an employee receives a fixed salary but works hours which fluctuate from week to week. Your fourth question must be considered in the context of your fifth question. You ask whether the hourly rate for an employee may be set by dividing 1/52 of the yearly rate by 64 when the normal number of hours of employment per week is 64. The method of computing overtime authorized by section 778.114 was not intended to apply to situations where an employee routinely works a massive number of hours; section 778.114 applies to employees whose hours fluctuate from week to week. See Yadav v. Coleman Oldsmobile, 538 F.2d 1206 (5th Cir. 1976); see also Walling v. A.H. Belo Corp., 316 U.S. 624 (1942); Donovan v. Brown Equipment and Service Tools, Inc., 666 F.2d 148, 152-53 (5th Cir. 1982). Consequently, if a Texas Youth Commission employee's standard workweek is 64 hours, the method of computing overtime authorized in section 778.114 cannot apply.

Your fifth question is whether the regular rate of pay may be computed by a method other than that specified in Attorney General Opinion H-465 (1974). Attorney General Opinion H-465 (1974) stated:

> It is well established that the proper method for the computation of hourly wages from monthly salaries for overtime purposes is to multiply the monthly salary by twelve to obtain the yearly rate, divide the yearly rate by 52 to obtain the weekly rate, and divide the weekly rate by the number of contracted hours of employment per week, usually forty, to obtain the hourly rate. Bay Ridge Operating Co., Inc. v. Aaron, 334 U.S. 446, 464 (1948); Triple "AAA" Company, Inc. v. Wirtz, 378 F.2d 884 (10th Cir. 1967), cert. denied, 389 U.S. 959 (1967); Patsy Oil & Gas Co. v. Roberts, 132 F.2d 826 (10th Cir. 1943); Seneca Coal & Coke Co. v. Loftin, 136 F.2d 359 (10th Cir. 1943), cert. denied, 320 U.S. 772 (1943); 29 C.F.R. §778.113 (1973). (Emphasis added).

Although a great deal of controversy has intervened since this opinion was decided, See Attorney General Opinion JM-475 (1986) (for history of applicability of the FLSA to public employers), it is once again

instructive. Under the federal regulations, a monthly salary translates to its equivalent weekly wage by multiplying the salary by 12 and dividing the product by 52. See 29 C.F.R. §778.113(b). The regular rate of pay for a salaried employee is determined by dividing the weekly wage by the number of hours per week which the salary is intended to compensate. See 29 C.F.R. §778.113(a).

As indicated in Attorney General Opinion H-465, the usual number of hours of employment per week is forty. This is understood with regard to most state employees because article 5165a mandates a 40 hour workweek. See also General Appropriations Act, Acts 1985, 69th Leg., ch. 980, art. V, §2(a), at budget 475 (keyed to employees covered by article 5165a). Article 5165a does not, however, apply to houseparents employed by and living at facilities supervised by the Texas Youth Commission.

You ask, in specific, whether the regular hourly rate for computing overtime may be determined by dividing 1/52 of the yearly salary by 64 when the normal number of hours of employment per week is 64. Consequently, what you are asking is not whether you may use a method other than that specified in Attorney General Opinion H-465, but whether you may use the method in Attorney General Opinion H-465 with a usual workweek which exceeds 40 hours. Obviously, the effect of applying this method would be significant. For example, if an employee received a yearly salary of $20,000, or approximately $385 per week, with the understanding and agreement that it constitutes compensation for a 40 hour workweek, the employee's regular rate of pay is approximately $9.63 per hour. If the employee worked 64 hours, the employee would be entitled to $9.63 for each of the first 40 hours ($385), and 1 1/2 times $9.63 for the 24 hours of overtime ($347). The employee would receive a total of $732 for the week. On the other hand, if the employee understands and agrees that the salary is intended to compensate a regular workweek of 64 hours, the regular rate of pay would be $6.02 per hour. The employee would receive only $6.02 for each of the first 40 hours ($241), and 1 1/2 times $6.02 for the 24 hours of overtime ($217). The employee would receive a total of $458 for the week. Thus, the employer still has to pay 1 1/2 times overtime for the hours actually worked in excess of 40, but at a greatly reduced regular rate of pay.

Whether the Texas Youth Commission may use a 64 hour workweek to compute an employee's regular rate of pay for determining overtime compensation under the FLSA depends on the existence of an understanding between the employee and employer that the employee's salary is intended to compensate the employee for a standard 64 hour workweek. See 29 C.F.R. §778.113(a). Regular rates for the purpose of computing overtime have been determined under the FLSA on the basis of a standard workweek which exceeds 40 hours. Overnight Motor Transportation Company, Inc. v. Missel, 316 U.S. 572, 580 (1942); Marshall

v. R & M Erectors, Inc., 429 F. Supp. 771, 778 (D. Delaware 1977). As the United States Supreme Court stated in the Overnight decision:

> It is true that the longer the hours, the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question. . . . It is this quotient which is the 'regular rate at which an employee is employed' under contracts of the types described and applied in this paragraph for fixed weekly compensation for hours, certain or variable.

316 U.S. at 580.

Nevertheless, there must be a clear understanding, arrived at before the performance of work, that the fixed salary is intended as compensation, exclusive of overtime, for a standard 64 hour workweek. See id.; see also 29 C.F.R. §778.113(a). In the example set forth above, the employee must understand the concept that his salary translates to a base pay of $6.02 per hour rather than $9.63 per hour before he performs the work in question. This does not mean that the employee must or may agree to work overtime at a non-overtime rate. An agreement for an employee to work over 40 hours a week at a non-overtime rate or to work at less than the minimum wage would not be enforceable because an employee's right to a minimum wage per hour and overtime pay for hours worked over 40 in a week is not subject to waiver by the employee. Allen v. Atlantic Richfield Co., 724 F.2d 1131, 1135 (5th Cir. 1984); see also 29 C.F.R. §778.107. In other words, an employee may agree to work for $6.02 per hour and may agree to work a 64 hour workweek. The employee cannot, however, agree to receive only $6.02 for the 24 hours of overtime; the employee must receive 1 1/2 times $6.03 for each hour of overtime worked. Whether an agreement exists that 64 hours constitutes an employee's standard workweek for the computation of a regular rate of pay under the FLSA depends upon factual determinations for which the article 4399, V.T.C.S., opinion process was not intended. Both the fact that Texas Youth Commission houseparents are expressly excluded from article 5165a's 40 hour workweek requirement and the fact that there may nevertheless exist a general understanding that yearly state salaries are fixed in terms of a 40 hour workweek must be considered.

You should also note that there are instances in which time spent on an employer's premises is not deemed to be compensable working time under the FLSA. See Barrentine v. Arkansas - Best Freight System, Inc., 450 U.S. 728 (1981); Allen v. Atlantic Richfield Co., 724 F.2d 1131 (5th Cir. 1984). The agreement of the parties is relevant to what constitutes compensable time under the FLSA. Allen v. Atlantic Richfield Co., 724 F.2d at 1136. Like the determination of what

constitutes a regular rate under the FLSA, the determination of what constitutes compensable working time under the FLSA involves complex mixed questions of fact and law. <u>Barrentine v. Arkansas - Best Freight System, Inc.</u>, 450 U.S. at 743. These questions cannot be resolved in the opinion process.

## S U M M A R Y

Section 2f(1) of the current General Appropriations Act does not prohibit state agencies from using the more liberal compensatory time provisions of the Fair Labor Standards Amendments of 1985. The Texas Youth Commission may not, however, apply the exceptions to the Fair Labor Standards Act of 1938, (FLSA) as amended, for law enforcement activities to an employee unless the employee fits the narrow definition of a law enforcement employee set forth in section 553.4 of Title 29 of the Code of Federal Regulations.

Article 5165, V.T.C.S., does not apply to houseparents who are employed by and who live at facilities supervised by the Texas Youth Commission.

Regular hourly rates for the computation of overtime under the FLSA may be determined on the basis of a standard workweek of 64 hours only if an understanding exists that the employee's salary is intended to compensate the employee for 64 hours, exclusive of overtime.

Section 778.114 of Title 29 of the Code of Federal Regulations addresses problems arising when an employee receives a fixed salary but works hours which fluctuate from week to week. If a commission employee's standard workweek is 64 hours, the method of computing overtime compensation authorized in section 778.114 cannot apply.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General